**Margaret NORTH, Plaintiff,**

v.

**PRECISION AIRMOTIVE CORPORATION; Precision Airmotive, LLC; Precision Air South, Inc., Precision Air, Inc., Consolidated Fuel Systems, Inc., Kelly Aerospace, Inc., and Approved Turbo Components–Florida, Inc., Defendants.**

Case No. 6:08–cv–2020–Orl–31DAB.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 26, 2009.

Philip J. Ford, The Wolk Law Firm, Philadelphia, PA, Terence Robert Perkins, Smith, Hood, Perkins, et al., PA, Daytona Beach, FL, for Plaintiff.

J. Lester Kaney, Cobb Cole, Daytona Beach, FL, Mary P. Gaston, Perkins Coie, LLP, Seattle, WA, Mitchel E. Kallet, Kern & Wooley, LLP, Palm Beach Gardens, FL, for Defendants.

## ORDER

GREGORY A. PRESNELL, District Judge.

This matter came before the Court without oral argument upon consideration of the Court's Order to Show Cause (Doc. 10), Defendant's, Precision Airmotive, LLC ("Precision LLC"), Response to the Order to Show Cause (Docs. 14 and 15), Plaintiff's, Margaret North ("Plaintiff"), Motion to Remand (Doc. 13), Precision LLC's Response in opposition to the Motion to Remand (Doc. 16) and Plaintiff's Reply thereto (Doc. 25).

**1.** While Precision LLC's Notice of Removal did not include a statement regarding the remaining Defendants' consent, the declarations filed in response to the Court's Order to Show Cause indicate that every Defendant consented to removal. In any event, because

## I. Overview

On November 26, 2008, Plaintiff brought suit in the Seventh Judicial Circuit Court in and for Volusia County, Florida, alleging that the decedent, her husband, died as a result of a plane crash in West Dover, Vermont (Doc. 2, ¶ 13–14). Prior to being served, Defendant Precision LLC removed the action to federal court, predicating removal on 28 U.S.C. §§ 1332 and 1441(b) (Doc. 1 at 1). All Defendants consented to removal and no Defendant was served prior to Precision LLC's removal (Docs. 15–2 through 15–6).[1] On December 15, 2008, the Court issued a Show Cause Order to Precision LLC (Doc. 10), directing Precision LLC to show cause why this case should not be remanded to state court for, *inter alia*, failure to comply with 28 U.S.C. § 1441(b) ("Section 1441(b)" or the "forum defendant rule").

In her Motion to Remand, Plaintiff makes three principal arguments. First, she contends that there is not complete diversity between the parties because she and certain Defendants are both citizens of the state of Florida (Doc. 13 at 1). Although Plaintiff concedes that the decedent was a citizen of the state of Vermont at the time of his death (Docs. 2, ¶ 15 and 13 at 3–4), Plaintiff argues that she has sued not only in her representative capacity as the administratrix of her husband's estate, but in her own individual capacity as a citizen of Florida. Second and notwithstanding her Florida citizenship, Plaintiff contends that removal was improper under the forum defendant rule because certain Defendants are citizens of Florida. Third, Plaintiff contends that removal was

no defendant had been served at the time of Precision LLC's removal, Precision LLC did not have to secure the remaining Defendants' consent. *See generally Diebel v. S.B. Trucking Co.*, 262 F.Supp.2d 1319, 1329 (M.D.Fla. 2003).

improper because Precision LLC removed this case prior to being served.

The parties agree that Florida substantive law is controlling with respect to all of Plaintiff's claims and that Plaintiff has brought suit pursuant to Florida's Wrongful Death and Survival statutes (Doc. 2, ¶ 12). Furthermore, Plaintiff does not appear to seriously dispute that the amount in controversy in this wrongful death action exceeds $75,000.00. Assuming, then, that there is complete diversity between the parties, that Precision LLC's removal was proper under the forum defendant rule, and that Precision LLC may remove prior to being served, this Court has subject matter jurisdiction. The Court addresses these three issues below.

## II. Standard of Review

■ Unlike state courts, lower federal courts are courts of limited jurisdiction: "They possess only that power authorized by [the] Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). There is a presumption that a cause lies outside this limited jurisdiction, and the burden of proving otherwise rests on the party asserting jurisdiction. *Turner v. Bank of North Am.*, 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–183, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir.2001).

■ For diversity jurisdiction to exist, no defendant may be a citizen of the same state as any plaintiff. *See* U.S. CONST. art. III, § 2; 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267, 3 Cranch 267, 2 L.Ed. 435 (1806), *overruled on other grounds*, *Louisville, Cincinnati & Charleston R.R. Co. v. Letson*, 43 U.S. 497, 555, 2 How. 497, 11 L.Ed. 353 (1844). Furthermore, removal statutes are to be construed narrowly,

and where the parties clash about jurisdiction, uncertainties are to be resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Syngenta Crop. Prot., Inc. v. Henson*, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *see also Univ. Of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999).

## III. Analysis

### A. Diversity of the Parties

#### 1. Plaintiff's Citizenship

In determining the citizenship of the legal representative of a decedent's estate, 28 U.S.C. § 1332(c)(2) provides: "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." Accordingly, in her capacity as administratrix of Robert North's estate, Plaintiff is deemed to be a citizen of the state of Vermont.

■ Notwithstanding the foregoing, Plaintiff contends that she has brought suit not only in her capacity as administratrix of her husband's estate but also in her individual capacity. Under Florida's Wrongful Death statute, Plaintiff argues that she is entitled to recover damages that are separate and distinct from the damages recoverable by the estate (Doc. 13 at 4). Accordingly, she argues that the Court must consider the citizenship of both herself and the decedent for purposes of determining diversity.

In pertinent part, Florida's Wrongful Death statute provides:

[An action for wrongful death] shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages ... caused by the injury resulting in death....

All potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint, and their relationships to the decedent shall be alleged. Damages may be awarded as follows:

(1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value....

(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury....

FLA. STAT. §§ 768.20 and 768.21.

While Plaintiff correctly notes that she is entitled to damages which are separate and distinct from those that may be recovered by the estate, courts applying Florida's Wrongful Death statute have concluded that the named plaintiff may sue only in her capacity as the personal representative of the decedent's estate and that survivors' claims must be brought by the personal representative. *See, e.g., Morgan v. Am. Bankers Life Assur. Co. of Fla.*, 605 So.2d 104 (Fla. 3d DCA 1992) (concluding that after the adoption of FLA. STAT. § 768.20 survivors may not assert independent claims arising out of a wrongful death and that survivors' claims must be brought through "the medium of a personal representative"); *see also Veltmann v. Walpole Pharmacy, Inc.*, 928 F.Supp. 1161, 1161 (M.D.Fla. 1996) (finding that, under Florida law, the real party in interest in a wrongful death action is the personal representative of the decedent's estate). Furthermore, in the context of determining diversity jurisdiction, federal courts have concluded that, under Florida law, only the personal representative of the decedent's estate may bring claims on behalf of the survivors and that the citizenship of the survivors is irrelevant in determining diversity. *See, e.g., Vaka v. Embraer–Empresa Brasileira de Aeronautica, S.A.*, 303 F.Supp.2d 1333, 1334 (S.D.Fla.2003)(concluding that the personal representative's citizenship is irrelevant for purposes of determining diversity, that survivors may not assert claims in their individual capacity under Florida's Wrongful Death statute, and that the citizenship of the decedent is the only relevant consideration in determining plaintiff's citizenship under Florida law).

Notwithstanding, then, that Plaintiff may be entitled to separate damages as a surviving spouse, Florida's Wrongful Death statute clearly precludes Plaintiff from asserting any claim in her own individual capacity which arises out of her husband's wrongful death. Accordingly, the Court concludes that, pursuant to 28 U.S.C. § 1332(c)(2) and FLA. STAT. § 768.20, Plaintiff is a citizen of Vermont, only, for purposes of determining diversity.

#### 2. Defendants' Citizenship

Precision Airmotive Corporation is a dissolved corporation that was organized under the laws of the state of Washington and which had its principal place of business in Washington (Docs. 2, ¶ 2 and 15–2, ¶ 3). To the extent Precision Airmotive Corporation may still be subject to liability, notwithstanding the fact that it has been dissolved, it is a citizen of Washington.

Precision Airmotive LLC is a corporation organized under the laws of the state of Washington with its principal place of business in Washington (Doc. 2, ¶ 3 and 15–2, ¶ 3). Precision Airmotive LLC is therefore also a citizen of Washington.

Precision Air South, Inc. is a corporation organized under the laws of the state of South Carolina with its principal place of

business in South Carolina (Doc. 15–3, ¶ 2). Precision Air South, Inc. is therefore a citizen of South Carolina.

Precision Air, Inc. is a dissolved corporation that was organized under the laws of the state of the Florida and which had its principal place of business in Florida (Docs. 2, ¶ 5 and 15–4, ¶ 3). To the extent Precision Air, Inc. may still be subject to liability, notwithstanding the fact that it has been dissolved, it is a citizen of Florida.

Consolidated Fuel Systems, Inc. was a corporation organized under the laws of the state of Alabama with its principal place of business in Alabama (Doc. 2, ¶ 6). Consolidated Fuel Systems, Inc. was acquired and subsumed by Kelly Aerospace, Inc. (Doc. 15–5, ¶ 3). To the extent that Consolidated Fuel Systems, Inc. may still be subject to liability, notwithstanding the fact that it has been acquired by Kelly Aerospace, Inc., it is a citizen of Alabama.

Kelly Aerospace, Inc. is a corporation organized under the laws of the state of Alabama with its principal place of business in Alabama (Docs. 2, ¶ 7 and 15–5, ¶ 4). Kelly Aerospace, Inc. is therefore a citizen of Alabama.

Approved Turbo Components–Florida, Inc. is a corporation organized under the laws of the state of Florida with its principal place of business in Florida (Docs. 2, ¶ 8 and 15–6, ¶ 3). Approved Turbo Components–Florida is therefore a citizen of Florida.

Based on the allegations in the Complaint, Precision LLC's Notice of Removal, and Defendants' declarations in response to the Court's Order to Show Cause (Docs. 15–2 through 15–6), no Defendant is a

citizen of the state of Vermont. Accordingly, there is complete diversity between the parties.

## B. Forum Defendant Rule

Pursuant to 28 U.S.C. § 1441(b), actions founded upon diversity "shall be removable only if none of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought" (emphasis added). Even where there is complete diversity between the parties, then, a defendant may not remove a case brought in a state court sitting in the same state in which any properly joined and served defendant is a citizen. While there can no longer be any dispute that there is complete diversity between the Plaintiff and the Defendants under Article III, Section 2 of the Constitution and 28 U.S.C. § 1332, Plaintiff contends that, because certain Defendants are citizens of Florida,[2] Section 1441(b) prohibits removal.

Precision LLC responds by noting that at the time of removal, no forum defendant had been "properly joined and served" (Doc. 16 at 12). Indeed, Precision LLC removed this action on December 2, 2008, six (6) days after Plaintiff filed suit in state court. According to Defendants' declarations, no Defendant (including the forum Defendants) had been served as of December 22, 2008 (Docs. 15–2 through 15–6).[3] Accordingly, Precision LLC argues that under the plain language of Section 1441(b), removal was proper.

This Court has recently joined the majority of circuit courts in concluding that Section 1441(b) is a waivable procedural requirement—not a jurisdictional necessi-

---

**2.** Specifically, Precision Air, Inc. (which has been dissolved) and Approved Turbo Components–Florida, Inc.

**3.** Because no returns of service have been filed with the Court, it is unknown when each

Defendant was served. However, Plaintiff does not dispute the contention that no forum defendant had been served prior to Precision LLC's removal (Doc. 13 at 4).

ty. *See Diaz v. Fountain Park Partners,* Case No. 08–CV–1009, 2008 WL 4716911, at *2 (M.D.Fla. Oct. 23, 2008). More specifically, in *Diaz,* this Court held that the propriety of removal under Section 1441(b) must be considered only at the time of removal—not at the time a diverse, forum defendant is later joined and served in an action. *Id. Diaz,* however, did not present the precise question which is now before the Court. In *Diaz,* the plaintiff had initially filed suit against the wrong defendant. *Id.* at *1. It was not until some three months later that the plaintiff finally joined the correct defendant and effected service. *Id.* at *2. In the instant case, however, there is no indication that Plaintiff joined an incorrect defendant or attempted to defeat removal by naming an uninterested forum defendant. Instead, Plaintiff simply did not effect service on either of the two properly joined forum defendants before Precision LLC removed.

Courts have been divided in their application of Section 1441(b) in circumstances such as these. Hewing closely to the unambiguous text of Section 1441(b), the majority of courts, including the Southern District of Florida, have concluded that a non-forum defendant may remove despite the fact that the plaintiff has joined, but not yet served, a forum defendant. *See, e.g., McCall v. Scott,* 239 F.3d 808, 813 n. 2 (6th Cir.2001); *Vitatoe v. Mylan Pharm., Inc.,* Case No. 08–CV–85, 2008 WL 3540462 (N.D.W.Va. Aug. 13, 2008); *Valerio v. SmithKline Beecham Corp.,* Case No. 08–60522–CIV, 2008 WL 3286976 (S.D.Fla. Aug. 7, 2008); *Masterson v. Apotex Corp.,* Case No. 07–61665–CIV, 2008 WL 2047979 (S.D.Fla. May 13, 2008); *Johnson v. Precision Airmotive, LLC,* Case No. 07–CV–1695, 2007 WL 4289656 (E.D.Mo. Dec. 4, 2007); *Waldon v. Novartis Pharm. Corp.,* Case No. 07–01988, 2007 WL 1747128 (N.D.Cal. June 18, 2007); *Thomson v. Novartis Pharm. Corp.,* Case No. 06–6280, 2007 WL 1521138 (D.N.J. May 22, 2007);

*Clawson v. FedEx Ground Package Sys., Inc.,* 451 F.Supp.2d 731 (D.Md.2006); *Ott v. Consol. Freightways Corp. of Del.,* 213 F.Supp.2d 662 (S.D.Miss.2002); *Mask v. Chrysler Corp.,* 825 F.Supp. 285 (N.D.Ala. 1993); *Wensil v. E.I. DuPont De Nemours and Co.,* 792 F.Supp. 447 (D.S.C.1992); *Republic Western Ins. Co. v. Int'l Ins. Co.,* 765 F.Supp. 628 (N.D.Cal.1991); *Windac Corp. v. Clarke,* 530 F.Supp. 812 (D.Neb. 1982); *see also* 14B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3723 at 624 (3d ed. 1998).

On the other hand, a number of courts have reached the opposite result. Relying putatively on legislative intent, these courts have concluded that Section 1441(b) prohibits removal notwithstanding the fact that a forum defendant had not been served at the time the notice of removal was filed in federal court. *See, e.g., Pecherski v. General Motors Corp.,* 636 F.2d 1156 (8th Cir.1981); *Ethington v. Gen. Elec. Co.,* 575 F.Supp.2d 855 (N.D.Ohio 2008); *Sullivan v. Novartis Pharm. Corp.,* 575 F.Supp.2d 640 (D.N.J.2008) (conceding, however, that an exhaustive review of the legislative history concerning Section 1441(b) failed to reveal any specific statement from "Congress [or] the advisory Committee on Revision of the Judicial Code ... regarding the addition of the 'properly joined and served' language"); *Brown v. Organon Int'l Inc.,* Case Nos. 07–3092 and 3456, 2008 WL 2833294 (D.N.J. July 21, 2008); *Allen v. GlaxoSmithKline PLC,* Case No. 07–5045, 2008 WL 2247067 (E.D.Pa. May 30, 2008) (but also concluding that removal by a non-forum defendant prior to service upon a forum defendant would be proper); *DeAngelo–Shuayto v. Organon USA Inc.,* Case No. 07–2923, 2007 WL 4365311 (D.N.J. Dec. 12, 2007); *Oxendine v. Merck and Co., Inc.,* 236 F.Supp.2d 517 (D.Md.2002); *Workman v. Nat'l Supaflu Sys., Inc.,* 676 F.Supp. 690 (D.S.C.1987). Many of these decisions, however, involved unserved fo-

rum defendants that had effected removal—not non-forum defendants. *See, e.g., Allen,* 2008 WL 2247067 (E.D.Pa.2008); *DeAngelo–Shuayto,* 2007 WL 4365311 (D.N.J. Dec. 12, 2007). Indeed, the *Allen* Court, in particular, distinguished instances where a forum defendant removes a case involving only one defendant and instances where a non-forum defendant removes a case involving multiple defendants (of which at least one defendant is a forum defendant), and concluded that the latter would be appropriate under Section 1441(b). *Allen,* 2008 WL 2247067, at *5; *see also DeAngelo–Shuayto,* 2007 WL 4365311, at *4 (making the same observation).

To a limited extent, the present divide concerning Section 1441(b) is reminiscent of the prior controversy regarding 28 U.S.C. § 1367 ("Section 1367")[4] and whether to rely on legislative intent, *see Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214 (3d Cir.1999), or the unambiguous text of the statute, *see Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928 (7th Cir.1996). In resolving the Section 1367 conflict, Justice Kennedy, writing for a majority of the Members of the Court, observed:

> As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms. Not all extrinsic materials are reliable sources of insight into legislative understandings, however, and legislative history in particular is vulnerable to two serious criticisms. First legislative history is itself often murky, ambiguous, and contradictory. Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in " 'looking over a crowd and picking out your friends.' " See Wald, Some Observations on Use of Legislative History in the 1981 Supreme Court Term, 68 Iowa L.Rev. 195, 214 (1983). Second, judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members-or, worse yet, unelected staffers and lobbyists-both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text....

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (rejecting, *inter alia, Meritcare Inc.'s* legislative intent approach to Section 1367).

While the analogy is, of course, imperfect, the Court finds the Supreme Court's approach to Section 1367 instructive in its analysis of Section 1441(b). Although Congress may not have anticipated the possibility that defendants could actively monitor state court dockets to quickly remove a case prior to being served,[5] on the

---

**4.** Section 1367 governs supplemental jurisdiction where a party asserts both federal and state law claims that "form part of the same case or controversy under Article III of the United States Constitution." The prior controversy regarding Section 1367 concerned, *inter alia,* whether certain parties joined to a suit under differing Federal Rules of Civil Procedure had to meet the minimum statutory amount in controversy required for diversi-

ty in order for the district court to have subject matter jurisdiction. *See generally Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

**5.** There is no evidence that Precision LLC engaged in such conduct in this case. In fact, Precision LLC did not remove until six days after Plaintiff filed suit and, according to all

facts of this case, such a result is not so absurd as to warrant reliance on "murky" or non-existent legislative history in the face of an otherwise perfectly clear and unambiguous statute. Nonetheless, if Congress intends a different result, "it is up to Congress rather than the courts to fix it." *Allapattah Servs., Inc.*, 545 U.S. at 565, 125 S.Ct. 2611.

■ Upon a careful and thorough review of the foregoing precedents and the Supreme Court's guidance in *Allapattah*, the Court concludes that, in a completely diverse case such as this one, a non-forum defendant that has not yet been served may remove a state court action to federal court under Section 1441(b) notwithstanding the fact that the plaintiff has already joined—but not yet served—a forum defendant.[6] Accordingly, the Court finds that Precision LLC's removal was not improper under the forum defendant rule.

## C. Removal Prior to Service

In pertinent part, 28 U.S.C. § 1446(b) provides:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. . . .

(emphasis added).

Relying on the Supreme Court's holding in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999), Plaintiff contends that Precision LLC's recipient of the Complaint, presumably from the state court's docket clerk, did not constitute "receipt by the defendant, through service or otherwise, of a copy of the initial plead-

ing," thus precluding Precision LLC's removal (Doc. 13 at 8). According to Plaintiff, Precision LLC must have actually been served with a copy of the Complaint and Summons before it could remove.

As Precision LLC correctly notes, however, the *Murphy Brothers* decision did not superimpose a service requirement on Section 1446(b) (Doc. 16 at 17–18). Instead, the Supreme Court held that a plaintiff's decision to fax a courtesy copy of the complaint to defense counsel did not trigger the thirty day time limit for removal under Section 1446(b). 526 U.S. 344, 347–48, 119 S.Ct. 1322, 143 L.Ed.2d 448; *see also Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 n. 23 (5th Cir.2000) (noting that, in *Murphy Brothers*, "the Supreme Court found that mere receipt of a complaint unattended by any formal service did not trigger a defendant's time to remove a case from state court. But the decision did not address whether service was a prerequisite for a defendant to be able to remove a case.").

■ Contrary to Plaintiff's view, courts permitting unserved non-forum defendants to remove under Section 1441(b) have concluded, axiomatically, that an unserved defendant in receipt of the complaint may remove prior to service under Section 1446(b). *See, e.g., Vitatoe*, 2008 WL 3540462 at *1; *Masterson*, 2008 WL 2047979 at *1. This Court reaches the same result.

## IV. Conclusion

Based on the foregoing, it is **ORDERED** that Plaintiff's, Margaret North, Motion to Remand (Doc. 13) is **DENIED**. It is **FURTHER ORDERED** that the Order to Show Cause (Doc. 14) is hereby

Defendants' sworn declarations, Plaintiff had still failed to effect service on any Defendant for almost a month after it filed suit.

6. The Court, however, does not address whether an unserved forum defendant can properly remove under Section 1441(b).

**DISCHARGED.** The Court retains subject matter jurisdiction pursuant to 28 U.S.C. § 1332.